IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AIDAN BEVACQUA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHWEST AIRLINES, CO., a Texas Corporation,<br><br>Defendant. | Civil Action No:<br><br>**COMPLAINT – CLASS ACTION**<br><br>BREACH OF CONTRACT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Aidan Bevacqua ("Plaintiff"), on behalf of himself and all others similarly situated, complain of Defendant Southwest Airlines Co. ("Southwest") as follows:

## INTRODUCTION

1. In its standard contract with passengers, Southwest promised to refund collected September 11th Security Fees ("TSA Fees") if passengers did not use the travel ticket(s) they purchased. But when passengers did not use their travel ticket(s) and thus, any TSA security services, Southwest systematically failed to refund the TSA Fees as promised and even refused when passengers specifically so requested.

2. Southwest's standard contract with each passenger is its Contract of Carriage ("COC"). From about May 2012 through March 30, 2022, Southwest's COC promised to refund TSA Fees for unused travel: Southwest stated that it would refund TSA Fees as required by the applicable regulations, and the applicable regulations do indeed require Southwest to refund the TSA Fees when a passenger does not travel.

3. The rationale for this is quite simple. While passengers prepay TSA Fees with their ticket purchase, no TSA security fees are owed if the passenger never travels on the purchased ticket. Instead, the applicable regulations and Southwest's COC require the full refund in the original form of payment of those TSA Fees for unused travel.

1

861172.3

4. In ordinary circumstances, a large number of passengers buy tickets for travel on Southwest, but then do not travel. The COVID-19 pandemic has expanded the set of passengers who do not use their pre-purchased travel. Whether due to government restrictions or recommendations against travel, health concerns, or cancellation of activities at their intended destination, millions of passengers found their travel plans disrupted by COVID-19. On information and belief, the number of passengers not using ticketed travel has increased dramatically during the COVID-19 pandemic.

5. Instead of providing its promised refund of TSA Fees to the original form of payment to these many passengers who did not or could not travel, Southwest improperly converted those funds into a Travel Credit, which restricted such funds to Southwest travel limited only to the originally ticketed passenger and expired one year after the date of issuance of the cancelled ticket. Though Southwest correctly promised to refund the TSA Fees in its COC, Southwest has essentially kept these monies intended to be remitted to the federal government for itself.

6. Plaintiff brings this class action to obtain refunds of improperly withheld TSA Fees for passengers who either cancelled their reservations with Southwest prior to travel or otherwise did not travel and received a Travel Credit instead of the promised refund.

## PARTIES

7. Plaintiff Aidan Bevacqua is a United States citizen residing in Seattle, Washington.

8. Defendant Southwest is incorporated in Texas. Its principal place of business, its headquarters, is in Dallas, Texas.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332(d) because the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of a state different from Southwest.

10. This Court has personal jurisdiction over Southwest because Southwest is incorporated in Texas and its principal place of business is in Dallas, Texas.

11. Venue is proper in this District pursuant to 28 U.S.C. section 1391 because Southwest is incorporated in Texas and its principal place of business is in Dallas, Texas.

## FACTUAL ALLEGATIONS

### Southwest Promised to Fully Refund Passengers Their Paid TSA Fees When They Do Not Travel

12. The TSA Fees collected by Southwest are refundable when a passenger does not travel on their purchased ticket, and Southwest has itself contractually promised to refund that fee.

13. Southwest forms a contract with each passenger when travel on Southwest is purchased. The Contract is Southwest's Contract of Carriage. Southwest drafted each version of its COC. Southwest's COC states: "This Contract of Carriage represents the entire, integrated agreement between the parties relating to transportation by Carrier, and shall supersede all prior representations, understandings or agreements pertaining thereto, either oral or written."

14. The relevant COCs are the versions in effect during the class period (defined in paragraph 37 below). While Southwest has some made modifications to its COC during the class period, the relevant provisions of the COC have remained the same throughout.

15. Each version of the COC has a Texas choice of law clause: "Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by, construed, and enforced in accordance with the laws of the United States of America and, to the extent not preempted by Federal law, the laws of the State of Texas without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted."

16. In addition to the fare price, passengers pay TSA Fees, taxes, and Passenger Facility Charges. Since at least 2003, Southwest has collected TSA Fees from passengers who purchase any travel departing from a U.S. airport. The TSA Fee is $5.60 for one-way travel and $11.20 for round-trip travel.

861172.3

17. The TSA Fees are collected because The Aviation and Transportation Security Act requires airlines to collect these fees to "pay for … costs of providing civil aviation security services …." 49 U.S.C. § 44940(a)(1).

18. To carry out collection of these fees, the legislation authorizes regulations. All regulations applicable to the collection of the TSA Fees are contained in Part 1510 of Title 49. The airline selling the ticket is responsible for collecting TSA Fees and remitting the fees to the TSA. 49 C.F.R. § 1510.13. If the passenger does not travel, the regulations oblige the airlines to refund the fee to the passenger. Id. § 1510.9(b).

19. Airlines have "neither legal nor equitable interest in the security service fees except for the right to retain any accrued interest on the principal amounts collected …." 49 C.F.R. § 1510.11(b).

20. In its applicable COCs, Southwest states passengers can cancel their reservation prior to the date of travel. If the reservation is cancelled, Southwest states passengers are "eligible for a refund or the funds will be available for future use consistent with the fare rule and refund procedures specified in Section 4c."

21. In Section 4c of Southwest's applicable COCs (up until March 30, 2022), Southwest promised to refund TSA Fees for "unused travel by Passengers" who purchased "Nonrefundable Tickets." The COC states (emphasis added):

> General. The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets are not eligible for refunds, except as provided in this Section and Section 9b. Taxes, security fees, and Passenger Facility Charges associated with a nonrefundable fare are also not eligible for refund *except as required by applicable regulations*.

22. The applicable regulations require Southwest to refund TSA Fees for unused travel. 49 C.F.R. § 1510.9(b). Southwest thus promised to refund Security Fees for unused travel.

4

**Secondary Authorities Confirm that Southwest's COC Means What It Says**

23. Secondary authorities confirm the plain meaning of section 1510.9(b). The Department of Homeland Security ("DHS") Office of Audits in 2006 prepared a Review of the Transportation Security Administration Collection of Aviation Security Service Fees (DHS OIG-06-35). At page 9 (PDF page 13), the DHS report summarizes: "air carriers have no grounds to keep fees of any kind that are owed to the ticket purchaser or TSA."

24. The Government Accountability Office ("GAO") in July 2010 prepared a report entitled Consumers Could Benefit from Better Information about Airline-Imposed Fees and Refundability of Government-Imposed Taxes and Fees (GAO-10-785) which again restated passengers' entitlement to TSA Fees refunds when they do not travel. The GAO summarized: "consumers with unused nonrefundable tickets with expired or lost value are entitled to a full refund of the September 11th Security Fee, but few consumers request a refund because airlines are not required to inform consumers of this."

25. Further, TSA's Guidance to Industry, issued March 20, 2020, states that "Retaining any portion of the fee or providing credit towards future services, with or without an expiration, does not constitute a refund."

**The History of Southwest's COC Confirms that It Means What It Says**

26. Up to approximately May 17, 2012, Southwest's COC did not promise to refund taxes, security fees, or passenger fees. In particular, Southwest's COC in this period stated: "The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets are not eligible for refunds, except as provided in this Section and Section 9b. Taxes, security fees, and Passenger Facility Charges associated with a nonrefundable fare are also not eligible for refund."

27. On or about May 17, 2012, Southwest revised its COC to commit to refund such taxes, fees, and charges "as required by applicable regulations." Southwest's specific addition of this clause, which had not previously been in its COC, indicated its specific intent to refund these taxes, fees, and charges when so required.

861172.3

28. Southwest then removed this promise on March 31, 2022, when it modified its COC, replacing the above provision with: "As the term "nonrefundable" reflects, the fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets (including taxes and government fees) are not eligible for refunds, except as specifically stated in this Contract of Carriage …." Thus, on or about March 31, 2022, Southwest ceased promising to refund the TSA fees at issue.

### Southwest Systematically Failed to Refund Passengers' Entire TSA Fee Despite Not Traveling

29. When a passenger does not travel on their purchased Southwest ticket, this obviates the basis for the TSA Fee, per the calculation in 49 CFR § 1510.5(a). As a result, Southwest's Contract of Carriage, which expressly incorporated section 1510.9(b), obliged Southwest to refund the TSA Fee – i.e., return it to the passenger in the original form of payment from which it was paid.

30. Southwest, however, systemically failed to issue refunds of TSA Fees to passengers who did not travel on their purchased ticket. Instead, Southwest improperly converted those TSA Fees into a Travel Credit for the passengers' possible future use with Southwest.

31. A Southwest Travel Credit is not a refund to a passenger's original form of payment. Southwest only allows a passenger to use their Travel Credit for themselves and no other passenger. In contrast, a refund of cash or to a credit card or gift card can be used for travel by anyone. Furthermore, during the Class Period (defined below), Travel Credits expired one year after the original booking was made. In contrast, a refund of cash or to a credit card or Southwest gift card does not expire. A Travel Credit also restricts the use of the TSA Fee funds towards future travel solely on Southwest. In contrast, for those who used cash or credit card to pay for their TSA Fees, a refund to the original form of payment would allow those passengers to use the TSA Fee funds for any airline or for some other transaction entirely unrelated to airline travel.

6

**Southwest Failed to Refund Plaintiff's Entire TSA Fee Despite Not Traveling.**

32. On August 28, 2020, Plaintiff purchased travel from Southwest. Southwest collected TSA Fees from Plaintiff at the time of purchase. Plaintiff redeemed Southwest Rapid Rewards Points for his Wanna Get Away, nonrefundable fare, and paid $5.60 for the TSA Fee, consisting of $4.80 from a Southwest gift card and the remaining $0.80 on a credit card.

33. Plaintiff was unable to travel and canceled his reservation on September 23, 2020. As a result of his cancellation, Southwest issued Plaintiff a Southwest Travel Credit in the amount of $4.80 instead of issuing a refund to his original form of payment (a Southwest gift card). In contrast, Southwest refunded the $0.80 paid for using Plaintiff's his credit card back to Plaintiff's credit card.

34. Instead of a refund, Southwest issued Plaintiff a Travel Credit with an expiration date on or around August 28, 2021. Plaintiff was unable to apply this Travel Credit towards a completed Southwest flight for only himself before its expiration date, and the Travel Credit expired unused.

35. Plaintiff contacted Southwest to request a full refund of his TSA Fees. Southwest refused to refund his full TSA Fee by phone and has yet to provide a written denial of his claim.

## CLASS ALLEGATIONS

36. Plaintiff brings this class action for monetary relief on behalf of himself and all similarly situated consumers and seeks class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) as set forth below.

37. **Class Definition**. The "Class" that Plaintiff seeks to represent are comprised of the following: All persons with a reservation purchased from Southwest that included a departure from an airport in the United States, whose travel was cancelled before the scheduled departure date or who otherwise did not travel, and who had their TSA Security Fee payment converted to Southwest Travel Credit for the time period of 4 years before the filing of this action through March 30, 2022.

38. Excluded from the above-referenced class definitions are the officers, directors, and employees of Southwest, and any of Southwest's shareholders or other persons who hold a financial interest in Southwest. Also excluded is any judge assigned to hear this case (or any spouse or family member of any assigned judge), or any juror selected to hear this case.

39. This action is properly maintained as a class action. The Class satisfies all of the requirements of Rule 23 for maintaining a class action.

40. **Ascertainability**. The members of the Class (collectively "Class Members") are known to Southwest. Their identities are recorded in Southwest's business records. Moreover, the Class Definition enables every putative class member to identify themselves as a member of the Class.

### The Class Meets the Requirements of Federal Rule of Civil Procedure 23(a).

41. **Numerosity**. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Plaintiff believes there are tens of thousands of members of the Class, who are geographically dispersed throughout the United States.

42. **Questions of Fact and Law Common to the Class.** Southwest has breached its contract with members of the Class by failing to refund their TSA Fees. There are numerous questions of law and fact common to the Class, including, but not limited to, the following:

    a. Whether a contract was formed at the time when a Class Member purchased a reservation for travel on Southwest;

    b. Whether Southwest breached the contract, under Texas law, by failing to refund the TSA Fees to the passenger's original form of payment, after Class Members cancelled their reservations or otherwise did not travel;

43. **Typicality**. The claims of the named Plaintiff are typical of those of the Class. Plaintiff's claims are typical of the claims of the proposed Class in the following ways: 1) Plaintiff is a member of the proposed Class; 2) Plaintiff's claims arise from Southwest's Contract of Carrier,

which applies uniformly to all Class Members; 3) Plaintiff's claims are based on the same legal and remedial theories as those of the proposed Class and involve similar factual circumstances; 4) the injuries suffered by the Plaintiff are similar to the injuries suffered by the proposed Class Members; and 5) the relief sought herein will benefit the Plaintiff and all Class Members alike. Defendant has no defenses that are unique to Plaintiff.

44.     **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse or antagonistic to the interests of the other members of the Class.  Plaintiff has retained competent counsel who are experienced in the prosecution of consumer class action litigation.

### The Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3).

45.     **Predominance.**  With respect to the claims of Plaintiff and the Class Members for monetary damages for breach of contract, class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the proposed Class.

46.     **Superiority.**  A class action is superior to other methods for the fair and efficient adjudication of this controversy because, inter alia: 1) individual claims by the Class Members would be impracticable because the costs of pursuit of such claims would far exceed what any individual Class Member has at stake; 2) relatively little individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions; 3) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; 4) the proposed Class is manageable, and no difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action; 5) the proposed Class Members are readily identifiable from Defendant's own records and through self-identification; and 6) prosecution of separation actions by individual members of the proposed Class would create the risk of inconsistent or varying adjudications with respect to individual

members of the proposed Class that would establish incompatible standards of conduct for Southwest.

## CAUSE OF ACTION

### Breach of Contract
### (on behalf of Plaintiff and the Proposed Nationwide Class)

47. Plaintiff incorporates by reference herein the allegations in paragraphs 1-46, inclusive.

48. Plaintiff and all other Class Members entered into valid and enforceable written contracts with Southwest for air transportation the terms of which are set forth in Southwest's Conditions of Carriage. During the Class Period, each such contract specified that the TSA Fees are refundable when required by regulation. The applicable regulations indeed require a refund when travel does not occur. Plaintiff and all members of the Class accepted Southwest's offer and fully performed their obligations under the contract.

49. Southwest nonetheless failed and refused to refund the TSA Fees when Plaintiff and Class Members did not travel. In breach of its contracts with Class Members, Southwest issued a Southwest Travel Credit instead of refunding the TSA Fees to the original form of payment.

50. As a direct result of Southwest's breach of contract, Plaintiff and all other Class Members suffered actual damages in the form of being denied their refundable TSA Fees, incurred reasonable and foreseeable economic harm, and are entitled to the recovery of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant as follows:

1. Certification of Plaintiff's claim as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the proposed Class;

2. Actual damages in an amount not less than the full amount of refunds for TSA Fees, in the passenger's original form of payment, owed by Southwest to Plaintiff and the proposed Class;

3. Pre-judgment at the maximum rate of interest permitted by law;

4. Post-judgment interest at the maximum rate of interest permitted by law;

5. Reasonable attorneys' fees and costs; and

6. Such other and further relief that the court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  August 18, 2022

Respectfully submitted,

STEPHEN T. BLACKBURN

 /s/ Stephen T. Blackburn
Stephen T. Blackburn (Tex. Bar No. 24043555)
Stephen.T.Blackburn@gmail.com
2626 Cole Avenue, Suite 300
Dallas, TX 75204
(214) 540-4537; (214) 594-8986 (fax)

GOLDSTEIN, BORGEN, DARDARIAN & HO
Laura L. Ho (*pro hac vice* to be submitted)
lho@gbdhlegal.com
James Kan (*pro hac vice* to be submitted)
jkan@gbdhlegal.com
Byron Goldstein (*pro hac vice* to be submitted)
brgoldstein@gbdhlegal.com
Mengfei Sun (*pro hac vice* to be submitted)
msun@gbdhlegal.com
155 Grand Avenue, Suite 900
Oakland, CA  94612
(510) 763-9800; (510) 835-1417 (fax)

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASS