IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AIDAN BEVACQUA, AMY MARCIN, DANIEL MARCIN, KYLE WALTON, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 3:22-cv-01837-L |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS**

## **TABLE OF CONTENTS**

                                                             **Page**

I. REPLY POINTS IN SUPPORT OF MOTION TO DISMISS ................................................... 1

    A.    Plaintiffs' theory of recovery does not fit within the *Wolens* Exception. ............... 1

        1.    Of the four cases that Plaintiffs affirmatively rely upon, none dictate incorporation of a specific federal regulation into the Contract of Carriage. ................................................................................... 1

        2.    Plaintiffs fail to meaningfully distinguish the cases relied upon by Southwest. ......................................................................................................... 3

    B.    Plaintiffs misinterpret Section 4c(3) of the Contract of Carriage. ......................... 4

II. REPLY POINTS IN SUPPORT OF MOTION TO STRIKE ................................................... 6

    A.    Discovery is not necessary to determine whether Plaintiffs agreed to the two sets of Terms & Conditions. ............................................................................. 6

    B.    The integration clause in the COC does not preclude enforcement of the Southwest Terms or the Rapid Rewards Terms & Conditions. .............................. 6

    C.    The scope of the class-action waiver in Southwest's Terms covers Plaintiffs' allegations and conduct. ......................................................................... 6

    D.    Regardless of the label applied to Southwest Terms, they are an enforceable agreement to which Plaintiffs assented. ............................................. 8

        1.    The Southwest Terms constitute a clickwrap agreement. .......................... 8

        2.    Even if the Southwest Terms constitute a sign-in-wrap agreement, they are enforceable. ................................................................................... 9

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*,
   106 F. Supp. 2d 895 (N.D. Tex. 2000) ...................................................................................8

*American Airlines Privacy Litigation,*
   370 F. Suupp. 2d 552 (N.D. Tex. 2005) .................................................................................1

*Andra Grp., LP v. BareWeb, Inc.*,
   2018 WL 2848985 (E.D. Tex. June 11, 2018) .......................................................................8

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*,
   2020 WL 5625740 (C.D. Cal. Sept. 17, 2020) ...................................................................3, 4

*Giannopoulos v. Iberia Líneas Aéreas de España, S.A.*,
   2011 WL 3166159 (N.D. Ill. July 27, 2011) .......................................................................2, 3

*HomeAdvisor, Inc. v. Waddell*,
   05-19-00669-CV, 2020 WL 2988565 (Tex. App.—Dallas June 4, 2020) .........................6, 10

*Kleiner v. Sw. Airlines Co.*,
   2009 WL 10674260 (N.D. Tex. Aug. 17, 2009) .....................................................................1

*Leerar v. WOW Air EHF*,
   2017 WL 11493651 (N.D. Cal. Sept. 5, 2017) ...............................................................2, 3, 4

*Nevarez v. Forty Niners Football Co., LLC*,
   2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......................................................................9

*NS412, LLC v. Finch*,
   2019 WL 4329947 (N.D. Tex. Sept. 11, 2019) ...................................................................8, 9

*Onoh v. Nw. Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010), (N.D. Tex. 2009) .............................................................1, 2, 3

*Phillips v. Neutron Holdings, Inc.*,
   2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) .....................................................................9, 10

*Ross v. Union Carbide Corp.*,
   296 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ..................................5

*Selden v. Airbnb, Inc.*,
   2016 WL 6476934 (D.D.C. 2016) ........................................................................................10

*Shrem v. Sw. Airlines Co.*,
    2016 WL 4170462 (N.D. Cal. Aug. 8, 2016) ...............................................................................4

*Walker v. Neutron Holdings, Inc.*,
    2020 WL 703268 (W.D. Tex. Feb. 11, 2020).........................................................................10

**Rules and Statutes**

Airline Deregulation Act..................................................................................................1, 4, 5

**Other Authorities**

49 C.F.R. § 1510.9(b) ......................................................................................................1, 2, 4

Plaintiffs admit that under the Airline Deregulation Act ("ADA"), their theory of recovery cannot be "an enlargement or enhancement" of the Contract of Carriage ("COC"). Resp. at 9. Yet Plaintiffs' theory does just that in spite of the overwhelming and unrefuted body of law that compels dismissal under the ADA if a claim seeks to enforce generic, but unnamed "applicable regulations" in an airline contract. In addition, Plaintiffs offer no other reasonable interpretation of the Contract of Carriage to support their claims. Their claims should therefore be dismissed.

Plaintiffs also undisputedly purchased airfare online and agreed to Southwest's Terms & Conditions (the "Southwest Terms"), regardless of the legal label applied to that online agreement. They offer no facts to the contrary. The class-action waiver in the Southwest Terms is broad and covers the conduct at issue, and Plaintiffs offer no reasonable interpretation otherwise. The class allegations should thus be struck.

## I. REPLY POINTS IN SUPPORT OF MOTION TO DISMISS

### A. Plaintiffs' theory of recovery does not fit within the *Wolens* Exception.

#### 1. None of Plaintiffs' cited authorities require incorporation of 49 C.F.R. § 1510.9(b) into Southwest's Contract of Carriage.

In a failed attempt to avoid preemption, Plaintiffs cite two cases from this judicial district that were effectively abrogated by the Fifth Circuit's later decision in *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596 (5th Cir. 2010), *aff'g* 2009 WL 10702913 (N.D. Tex. 2009).[1] As explained in the Motion to Dismiss/Strike (the "Motion"), *Onoh* (both the Fifth Circuit decision and the trial court decision that it affirmed) recognized that ADA preemption is broad and that a generic reference to "regulations" is insufficient to constitute an enforceable self-imposed undertaking under *Wolens*.

---

[1] In *Kleiner*, the Plaintiffs claimed breach of an "express warranty" to provide transportation "subject to applicable laws," expressly including FAA regulations. *Kleiner v. Sw. Airlines Co.*, 2009 WL 10674260 at *1 (N.D. Tex. Aug. 17, 2009). In *American Airlines Privacy Litigation*, the contract was not quoted but is described as referring to "required . . . law." 370 F. Supp. 2d 552, 566 (N.D. Tex. 2005). And as noted in the Motion (and not disputed in the Response), *American Airlines* never attempted to explain how the actual language of the contract incorporated external laws. Motion at 14 n.7 (noting also that numerous cases have distinguished or negatively treated this decision).

613 F.3d at 599, 600; 2009 WL 10702913 at *2.  As the Fifth Circuit stated, a theory of liability is preempted where the only way to assess any breach "would be . . . to reach beyond the contract and interpret a variety of external laws that were not expressly incorporated in the contract."  613 F.3d at 600.  Nothing in *Onoh* supports the proposition that a contractual obligation can be imposed from a generic reference to applicable regulations, even if (as Plaintiffs incorrectly claim) there is only one possible source of the obligation.

Plaintiffs' theory runs afoul of *Onoh* in other respects as well.  First, in the absence of an express reference to a specific regulation, the initial task of ascertaining which regulation applies will require "interpret[ing] a variety of external laws" (even if the conclusion is that only one or likely only one regulation applies).  *Onoh*, 613 F.3d at 600.  More critically here, based on the Amended Complaint and the Response, Plaintiffs' theory of liability requires reference to multiple external sources.  To be sure, they self-servingly claim that the "only" applicable regulation is 49 C.F.R. § 1510.9(b).  But even Plaintiffs must look outside of the COC to make that conclusion.  Section 1510.9(b) does not define what constitutes a refund, and so Plaintiffs point to a host of other sources to define the nature of Southwest's obligation.  These sources include Homeland Security Audits from 2006, a Government Accountability Report from 2010, TSA Industry Guidance from March 2020 (i.e., during the class period), and a dictionary.  Am. Compl. ¶¶ 27-29; Resp. at 6.  Notably, none of these sources—not the federal regulation or the other sources—requires a "refund . . . **to the original form of payment**," as Plaintiffs contend.  *E.g.*, Resp. at 6 (emphasis added).  Nor do Plaintiffs address other regulations that concern "taxes" or "Passenger Facility Charges" (which are referenced along with "security fees" in COC § 4c(3)(i)) or airline refunds.  *E.g.*, 14 CFR § 259.5; Motion at 10 (discussing tourism tax case).

Plaintiffs' reliance on *Leerar* and *Giannopoulos* is likewise misplaced.  Each involved

- 2 -

contracts where, unlike here, the contract expressly referred to a specific regulation.  *See Leerar v. WOW Air EHF*, 2017 WL 11493651 at *1 (N.D. Cal. Sept. 5, 2017) ("compensation . . . according to the Regulation EC 261/2004"); *Giannopoulos v. Iberia Líneas Aéreas de España, S.A.*, 2011 WL 3166159 (N.D. Ill. July 27, 2011) (referencing EU 261).  Tellingly, Plaintiffs identify the "key distinction in *Giannopoulos* [as] the 'as established' language, not that it happened to name EU 261."  Resp. at 12.  But *Giannopoulos* did not indicate that its analysis turned on that particular language; meanwhile, it actually cited *Onoh* (and other cases discussed in the Motion) and expressly distinguished situations involving "generic references to 'applicable law.'" 2011 WL 3166159 *3.

*Leerar*, in turn, relied on decisions from the Northern District of Illinois, which are cited in the Motion.  *Id.* at *4-5; Motion at 13–14.  The *Leerar* contract contained a specific reference to EU 261, and *Leerar* was focused on the distinctions between verbiage that might be used to incorporate that specific regulation (e.g., "as applicable" v. "if applicable").  2017 WL 11493651 at *6–7.  Thus, where no specific regulation that could possibly be the subject of incorporation is expressly mentioned in the contract, the incorporation verbiage is simply irrelevant.

    2.    **Plaintiffs fail to meaningfully distinguish the cases relied upon by Southwest.**

Plaintiffs claim that *Onoh* is inapposite, but as noted above, *Onoh* prohibited exactly what they request: reliance on external laws to ascertain the nature of a purported contractual obligation.

Plaintiffs' attempts to distinguish *Norwegian Air* on the basis that it used "subject to" rather than "as required by" verbiage are also unavailing.  While "subject to" verbiage was one part of the *Norwegian Air* analysis, the key holding in *Norwegian Air* could not be more plain:  "an airfare contract that identifies an exact regulation or statute and guarantees compliance with it will generally be sufficient to infer an intent to incorporate extraneous law.  In contrast, an airfare contract that broadly vows to abide by all applicable laws would not suggest the same inference."

- 3 -

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, 2020 WL 5625740, at *4 (C.D. Cal. Sept. 17, 2020); Motion at 11.  The Response makes no attempt to grapple with this point.[2]

Turning to *Shrem*, Plaintiffs do not disagree with its analysis but instead unproductively (and incorrectly) quibble with *Shrem*'s purported *dicta*.  The fact that *Shrem* applied ADA preemption to dismiss **non-contract** claims is a meaningless distinction.  *Shrem*'s holding—that determining a breach of duty would require the court to "**look beyond the contract** and interpret the regulation," which would "defeat *Wolen*'s requirement that the commitment be 'self-imposed' and not enhanced by laws outside of the contract"—relied on the contract language, remains directly applicable to this case, and supports dismissal of Plaintiffs' claims.  *Shrem v. Sw. Airlines Co.*, 2016 WL 4170462, at *3 (N.D. Cal. Aug. 8, 2016) (emphasis added); Motion at 10, 12.

Finally, Plaintiffs claim that *Buck* (which dismissed claims based on a generic reference to regulations) is distinguishable because "[h]ere, the sole incorporated DOT regulation is expressly, not implicitly, incorporated and referenced in the COC."  Resp. at 13.  But that simply isn't true.  "§ 1510.9(b)" appears nowhere in the actual text of the COC.

**B.     Plaintiffs misinterpret Section 4c(3) of the Contract of Carriage.**

The plain language of the COC supports dismissal.  Motion at 15-17.  Plaintiffs strained interpretation of Section 4c(3) of the COC does not change this result.

First, Section 4c(3)(ii) states, "***the fare paid*** for unused nonrefundable Tickets, ***including*** taxes, ***security fees***, and Passenger Facility Charges, ***may*** be applied toward the purchase of future travel on Carrier for the originally ticketed Passenger only."  App. 272 (emphasis added).  Plaintiffs incorrectly assert that the use of "may" (rather than "shall") means "merely . . . that passengers have the option to request a Travel Credit (as opposed to a refund)."  Resp. at 7.  But Section

---

[2] As with *Leerar* and *Norwegian Air*, Plaintiffs argue about the incorporation verbiage ("if" and "may") in attempting to distinguish *Polinovsky*.  As discussed above, the incorporation verbiage is not the key issue.

4c(3)(ii) applies to the "fare paid" as well as "security fees." Plaintiffs' interpretation of this sentence to allow for an unfettered right to a cash refund would undermine and contradict (a) the contractual restrictions of a discounted "nonrefundable fare," (b) the unequivocal sentence in that same section stating, "No cash refund or credit card adjustments will be made for nonrefundable Tickets," and (c) the sentence in the prior subsection stating, "The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets are not eligible for refunds, except as provided in this Section and Section 9b." The use of "may" simply indicates that the passenger (not the purchaser) is allowed to (but not required to) use the amount of the original fare toward the purchase of other travel.

Indeed, the most specific statement on remedies available for nonrefundable tickets is the unequivocal statement that "No cash refund or credit card adjustments will be made." Plaintiffs somehow interpret this sentence to "confirm[] Southwest will not convert Travel Credits into cash refund or credit card adjustments." Resp. at 7. Contrary to Plaintiffs' constrained interpretation, this sentence means exactly what it says: if a passenger elects to cancel a nonrefundable ticket, no cash refund or credit card adjustments will be made.

Finally, Plaintiffs argue that Southwest's interpretation of § 4c(3) renders meaningless the "not eligible for refund except as required by applicable regulations" language upon which their claim relies. Resp. at 7. That language, however, does not reflect a specific contractual undertaking (as discussed above). In that sense, it is unenforceable and thus meaningless. But that result is a function of ADA preemption. Unenforceable or void language is not revived simply because its invalidity would render the language meaningless. *See, e.g.*, *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 218 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (discussing severance of illegal or unconscionable contract provisions).

## II. REPLY POINTS IN SUPPORT OF MOTION TO STRIKE

**A.   Discovery is not necessary to determine whether Plaintiffs agreed to the two sets of Terms & Conditions.**

Southwest put forth uncontroverted facts in support of the Motion to Strike: Bevacqua is member of the Rapid Rewards program, Plaintiffs purchased online, and their purchase pages appeared as set forth in Southwest's declarations. Plaintiffs, who have direct knowledge of their purchases, made no attempt to controvert these facts. None denied purchasing tickets online. None denied being presented with the purchase pages as described in the declarations. The Response simply presents no evidence to raise an issue of fact requiring discovery.[3] This threshold issue should therefore be decided at this early stage to avoid the unnecessary expense of litigating this case as a class action, when Plaintiffs are contractually barred from doing so.

**B.   The integration clause in the COC does not preclude enforcement of the Southwest Terms or the Rapid Rewards Terms & Conditions.**

Plaintiffs argue that "the COC is the fully integrated agreement regarding the fares and charges for air transportation." Resp. at 16. In doing so, they ignore that the first paragraph of the Contract of Carriage states that "Transportation by [Carrier] is subject to the following terms and conditions, in addition to any terms and conditions printed on any Ticket, or specified on the Carrier's website." *E.g.*, App. 260 § 1(a)(1). The COC thus makes clear that other specific contractual terms on the website also govern Southwest's relationship with its customer.

**C.   The scope of the class-action waiver in Southwest's Terms covers Plaintiffs' allegations and conduct.**

In discussing the scope of the waiver in the Southwest Terms, Plaintiffs emphasize irrelevant language while ignoring key language cited by Southwest. That language emphasized

---

[3] Although Plaintiffs contend that whether a valid agreement was formed is a "fact-intensive inquiry," Resp. at 16, the arguments they raise related to conspicuousness and reasonable notice are typically resolved as matter of law. *See, e.g.*, *HomeAdvisor, Inc. v. Waddell*, 05-19-00669-CV, 2020 WL 2988565, at *4 (Tex. App.—Dallas June 4, 2020).

by Plaintiffs concerns "*information, features, content*, and services that [Southwest] . . . make[s] available" through the website.  Resp. at 17.  But Southwest is not contending that Plaintiffs' claims somehow relate to "information, features, or content" but rather relate to the one item in that list that Plaintiffs did not emphasize: "services" available through the website.  Motion at 18.

Plaintiffs contend that the class-action waiver is "limited to website or mobile application access rather than the broader offering of air transportation." Resp. at 18.  But that limitation is absent from the text of the waiver.  Moreover, Plaintiffs do not dispute that the "Service" is the vehicle by which Southwest transacts with its customers (including Plaintiffs) for air travel and related services (including refunds).  Plaintiffs' only textual argument for this position is that the "Service" (as defined broadly in the Southwest Terms, *see* Motion at 17) is only offered to individuals who are at least 13 years old.  Resp. 18.  This is a nonsensical red herring.  Plaintiffs are not under the age of 13.  The Southwest Terms do not concern who may be provided air transportation services available through the website; they concern who is authorized to transact with Southwest for air travel.

Sprinkled throughout Plaintiffs' Response is an argument that because refunds for TSA fees are not mentioned anywhere in the class-action waiver, the waiver should not be enforced in this case.  *E.g.*, Resp. at 18.  But the function of the waiver—like most other contractual waivers (e.g., jury waivers, forum waivers, claim waivers)—is not to identify every specific type of claim that falls within the waiver but rather to broadly encompass a wide variety of claims, which is precisely what Southwest's class-action waiver does.  Motion at 18.  The Response does not sufficiently address this issue, arguing that the contractual provisions in Southwest's supporting "related to" cases were construed broadly based on specific case context.  Resp. at 19.  But in addressing a case concerning forum clauses, arbitration clauses, and jury waivers, Plaintiffs

unhelpfully assert that these types of clauses are presumptively interpreted favorably in terms of coverage or validity.  Resp. at 19.  The truth is that these types of clauses are typically phrased broadly, and thus courts properly give them a broad construction.  Motion at 18.

Finally, Plaintiffs argue that there is a conflict between the COC and the Southwest Terms because the COC does not contain a class action waiver.  The COC is silent as to a class action waiver, and so there is no conflict.[4]

**D.      Regardless of the label applied to Southwest Terms, they are an enforceable agreement to which Plaintiffs assented.**

**1.      The Southwest Terms constitute a clickwrap agreement.**

A clickwrap agreement allows a consumer to assent to the terms of a contract by selecting an accept button on a website.  *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, n.15 (N.D. Tex. 2000).  One hallmark of a clickwrap agreement is express assent.  *NS412, LLC v. Finch*, 2019 WL 4329947, at *3 (N.D. Tex. Sept. 11, 2019).  This hallmark is in contrast to the nature of browsewrap agreements.  With browsewrap agreements, a website user implicitly assents to an online agreement merely by using a website that includes the agreement (e.g., in a hyperlink at the bottom of a home page); the user need not explicitly assent to the terms of the agreement.  *See, e.g.*, *Andra Grp., LP v. BareWeb, Inc.*, 2018 WL 2848985, at *9 (E.D. Tex. June 11, 2018).

Here, Plaintiffs expressly assented to the Southwest Terms by clicking the "Purchase" button to purchase their flight tickets, regardless of the interface (i.e., mobile or web version).  *See* App. 352–54 (Hursh Dec. ¶¶ 4–7).  Southwest indicates immediately above the "Purchase" button that by clicking this button, the user accepts Southwest's conditions, and it hyperlinks to the

---

[4] For reasons similar to those stated in this section, the scope of the class-action waiver in the Rapid Rewards Terms & Conditions covers Plaintiff Bevacqua's allegations and conduct.  Plaintiffs made similar arguments as to each set of Terms & Conditions.  *See* Resp. at 20.

Southwest Terms below the button.  *See* App. 352–54 (Hursh Dec. ¶¶ 4–7).  Southwest's interfaces thus do not involve a passive browsewrap agreement.

Plaintiffs argue that because they did not "check a box to specifically accept" the Southwest Terms, the interfaces do not constitute valid clickwrap agreements.  Resp. at 23.  But a website need not include a "box" to "check" for the online agreement to be enforceable.  Indeed, this Court has concluded that in "hybrid" situations "involving agreements that do not clearly fit into either category [of browsewrap or clickwrap], 'courts have . . . been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, **where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website**.'"  *NS412, LLC*, 2019 WL 4329947, at *2, 3 (emphasis added).  And other courts have enforced such online agreements in the context of a purchase transaction.  *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at *10 (N.D. Cal. Aug. 15, 2017) (addressing Ticketmaster's purchasing interface and holding that a user assented to the website's Terms of Use (TOU) through a "submit order" button).  Again, Plaintiffs were required to "agree" to the Southwest Terms by clicking "Purchase" in order to complete their purchase of Southwest tickets.  *See* App. 352–54 (Hursh Dec. ¶¶ 4–7).

      **2.**    **Even if the Southwest Terms constitute a sign-in-wrap agreement, they are enforceable.**

A sign-in-wrap agreement notifies the user of the website's terms of use and—instead of providing an "I Agree" or "Accept" button—advises the user that he or she is agreeing to the terms by signing up, such as through the use of a "next" button.  *See Phillips v. Neutron Holdings, Inc.*, 2019 WL 4861435, at *4 (N.D. Tex. Oct. 2, 2019).  Of course, there is no contention by Plaintiffs that they were signing up for an account through their purchase transaction.

In any event, courts have enforced these types of agreements "where the user had

reasonable notice of the existence of the terms" ("i.e., where the notice was reasonably conspicuous"). *Walker v. Neutron Holdings, Inc.*, 2020 WL 703268, at *3 (W.D. Tex. Feb. 11, 2020), *adopted*, 2020 WL 4196847 (W.D. Tex. Apr. 8, 2020).  Courts typically find adequate notice when the notice (1) contained hyperlinks to the various agreements, (2) was placed roughly in the middle of the page, in close proximity to the sign-up buttons, (3) appeared in dark font in contrast to white background, and (4) was clearly legible. *Phillips*, 2019 WL 4861435, at *4 (citing *Selden v. Airbnb, Inc.*, 2016 WL 6476934 at *2, 5 (D.D.C. 2016)).  For example, in *HomeAdvisor*, the submittal screen gave users reasonably conspicuous notice of the terms of service: "'By submitting this request, you are agreeing to our Terms & Conditions' written directly underneath [the submit button]. The text with the hyperlink to the terms and conditions is dark against a bright white background, clearly legible, and the same size as the nearly all of the text on the screen. The entire screen is visible at once with no scrolling necessary. The hyperlink may be clicked, and the terms of the agreement may be viewed, before the user submits a request for service." *HomeAdvisor, Inc. v. Waddell*, 2020 WL 2988565, at *4 (Tex. App.—Dallas June 4, 2020).

Despite Plaintiffs' interpretation, the screenshots of the applicable interfaces illustrate (1) hyperlinks to the Southwest Terms, (2) in a font that contrasts with the background (i.e., light font on dark background or vice versa), and (3) clear legibility. *See* App. 352–53 (Hursh Dec. ¶¶ 4–5).  Moreover, the hyperlink to the Southwest Terms is clearly visible on the same screen on both the interfaces, and both interfaces indicate immediately above the "Purchase" button that by clicking the button, the user is agreeing to or accepting Southwest's conditions. *See* App. 352–53 (Hursh Dec. ¶¶ 4–5).  The Southwest Terms are thus enforceable against Plaintiffs, including the class-action waiver in those terms.

Dated: January 17, 2023                    Respectfully submitted,

                                           NORTON ROSE FULBRIGHT US LLP


                                           */s/ Michael A. Swartzendruber*
                                               Michael A. Swartzendruber
                                               State Bar No.  19557702
                                               michael.swartzendruber@nortonrosefulbright.com
                                               James V. Leito IV
                                               State Bar No.  24054950
                                               james.leito@nortonrosefulbright.com
                                               Catharine Greer Goss
                                               State Bar No.  24121228
                                               greer.goss@nortonrosefulbright.com
                                           2200 Ross Avenue, Suite 3600
                                           Dallas, TX  75201-7932
                                           Telephone:    (214) 855-8000
                                           Facsimile:    (214) 855-8200

                                           ***Counsel for Defendant Southwest Airlines Co.***


**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, the foregoing document was filed with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                           */s/ James V. Leito IV*
                                           James V. Leito IV