IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AIDAN BEVACQUA, AMY MARCIN, DANIEL MARCIN, and KYLE WALTON, individually and on behalf of others similarly situated,<br>            Plaintiffs,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., a Texas Corporation,<br>            Defendant. | §§§§§§§§§§§§ Civil Action No. 3:22-CV-1837-L |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Southwest Airlines Co.'s Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") and Motion to Strike Class Allegations pursuant to Federal Rule of Civil Procedure 23 ("Motion to Strike"), filed December 9, 2022 (Doc. 25). After considering the motion and accompanying brief, response, reply, pleadings, and applicable law, the court **grants** the Motion to Dismiss and **denies as moot** the Motion to Strike.

**I. Factual and Procedural Background**

Aidan Bevacqua ("Mr. Bevacqua"), Amy and Daniel Marcin (the "Marcins"), and Kyle Walton ("Mr. Walton") (collectively, "Plaintiffs") initiated this suit against Southwest Airlines Co. ("Defendant" or "Southwest") on August 18, 2022, asserting claims for breach of contract and seeking class certification. On November 14, 2022, Plaintiffs filed their Amended Complaint (Doc. 22).

**Memorandum Opinion and Order - Page 1**

On or about August 28, 2020, Mr. Bevacqua purchased a one-way, nonrefundable plane ticket from Defendant. He paid for the airfare using points he obtained from his participation in Defendant's loyalty rewards program, Rapid Rewards. Defendant's policies dictate that Rapid Rewards Points cannot be used to pay the Security Fee, a mandatory charge that Defendant solicits from all customers and remits to the Transportation Security Administration ("TSA"). The TSA Security Fee for Mr. Bevacqua's one-way trip was $5.60. Mr. Bevacqua used a Southwest gift card to pay $4.80 of this fee and charged the remaining 80 cents to his credit card. Mr. Bevacqua was unable to travel and canceled this reservation. As a result, Defendant issued Mr. Bevacqua a travel credit in the amount of $4.80 to reimburse the portion of the TSA Security Fee paid for using a Southwest gift card and processed a refund to Mr. Bevacqua's credit card in the amount of 80 cents. The travel credit expired before Mr. Bevacqua applied it to a future purchase.

On or about January 29, 2020, the Marcins purchased two round-trip nonrefundable tickets from Defendant using a credit card. The fare included $22.40 in TSA Security Fees. The Marcins were unable to travel as planned and canceled these tickets in March of 2020. As a result, the Marcins received two nontransferable travel credits, with an expiration date, each in the amount of $247.96, which included the TSA Security Fees.[1] The Marcins have not used these travel credits, but they remain valid and unexpired.

Finally, on or about February 16, 2020, Mr. Walton purchased a round-trip, nonrefundable ticket using a credit card. The fare included $11.20 in TSA Security Fees. When Mr. Walton canceled his trip, Defendant issued a travel credit in the amount of $417.96, which included the TSA Security Fee. Mr. Walton did not use this travel credit before it expired.

---

[1]Defendant later modified the Marcins' travel credits to eliminate the expiration date.

**Memorandum Opinion and Order - Page 2**

Upon purchasing a ticket from Southwest, all customers enter into a binding agreement with it that is set out in it's Contract of Carriage ("COC").[2] The COC "represents the entire, integrated agreement between the parties relating to transportation by [Southwest]" and governs "all published routes and services provided by [it] as well as all fares and charges." Def.'s App. 303. The COC also provides, however, that air transportation provided by Southwest "is subject to the following terms and conditions"—referring to the terms of the COC itself—"in addition to any terms and conditions printed on any Ticket, or specified on [its] website." Def.'s App. 260.

The Amended Complaint alleges that Defendant breached the COC by failing to comply with relevant federal regulations that were purportedly incorporated into the COC by reference. Additionally, the Amended Complaint contains allegations regarding a putative class defined as:

> All persons with a nonrefundable ticket purchased from Southwest that included a departure from an airport in the United States, whose travel was cancelled before the scheduled departure date or who otherwise did not travel, and who had their TSA Security Fee payment converted to Southwest Travel Credit for the time period of 4 years before the filing of this action through March 30, 2022.

Am. Compl. ¶ 47. Plaintiffs seek certification of a class action, damages equal to or greater than the amount of the TSA Security Fees paid by Plaintiffs and converted to travel credits upon cancellation of their tickets, prejudgment and postjudgment interest, and attorney's fees and costs.

## II. Applicable Law

### A. Standard for Rule 12(b)(6) Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

---

[2] As Defendant notes in its brief, several different versions of the COC apply to the various purchases at issue in this case; however, the versions are substantively identical in all relevant respects.

**Memorandum Opinion and Order - Page 3**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings

**Memorandum Opinion and Order - Page 4**

if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir.

1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

Here, Defendant attached the COC to its Motion to Dismiss. The Amended Complaint explicitly refers to the COC, and the COC is central to Plaintiffs' claims because it is the contract that they allege Defendant breached. This document is therefore considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. Defendant also attached several additional documents to its Motion to Dismiss, including the Terms & Conditions for use of its website and Rapid Rewards loyalty program. Defendant maintains that these documents are properly considered in the context of its Motion to Strike, but it does not argue that they are part of the pleadings for the purpose of the Motion. Because they were not mentioned in the Amended Complaint, they are not properly considered part of the pleadings. Accordingly, the court has not considered them in deciding the Motion to Dismiss.

### B. Preemption

Defendant moves to dismiss Plaintiffs' breach of contract claims on the basis that they are preempted by the federal Airline Deregulation Act ("ADA").

Before 1978, the Federal Aviation Act ("FAA") "empowered the Civil Aeronautics Board (CAB) to regulate the interstate airline industry." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). When it was passed, the FAA "authorized the [CAB] both to regulate fares and to take administrative action against deceptive trade practices," and it did not contain a preemption clause. *Id*. In 1978, however, Congress enacted the ADA in an attempt to deregulate domestic air travel. *Id*. "To ensure that the States would not undo federal deregulation with regulation of their own, … the

**Memorandum Opinion and Order - Page 6**

ADA included a preemption clause." *Id*. (internal quotation marks and citation omitted). That clause reads, in relevant part: "[A] State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier …." 49 U.S.C. § 41713(b)(1).

The Supreme Court has interpreted this preemption clause in several cases. In *Morales v. Trans World Airlines, Inc.*, the Court held that the use of state consumer protection laws to enforce guidelines pertaining to airfare advertising promulgated by the National Association of Attorneys General was precluded by the ADA's preemption clause. 504 U.S. 374, 390 (1992). Three years later, relying on its reasoning in *Morales*, the Court concluded that claims made pursuant to an Illinois consumer protection law were preempted by the ADA. *Wolens*, 513 U.S. at 228. The *Wolens* Court also held, however, that "the ADA permits state-law-based court adjudication of routine breach-of-contract claims." *Id*. at 232. In so holding, the Court noted that the "distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.

In the years following the Court's decision in *Wolens*, federal courts have more clearly defined the scope of ADA preemption. Courts now refer to the rule set out in *Wolens* as the "*Wolens* exception" to what is otherwise a broad preemption clause. *See, e.g.*, *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010); *Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, at *3 (5th Cir. Mar. 8, 2023) (per curiam). Thus, under *Wolens*, although most state-law claims are preempted by the ADA, "the ADA's preemption clause does not extend so far as to 'shelter airlines from suits … seeking recovery solely for the airline's alleged breach of its own, self-

**Memorandum Opinion and Order - Page 7**

imposed undertakings." *Onoh*, 613 F.3d at 600 (quoting *Wolens*, 513 U.S. at 228). The Fifth Circuit has developed a two-part test for determining whether the *Wolens* exception applies in a given case. A claim that would otherwise be preempted under the ADA remains viable if "1) the claim alleged only concerns a self-imposed obligation; and 2) no enlargement or enhancement of the contract occurs based on state laws or policies external to the agreement." *Id*. (first citing *Wolens*, 513 U.S. at 228; and then citing *Lyn-Lea Travel Corp. v. American Airlines*, 283 F.3d 282, 287 (5th Cir. 2002)). The *Wolens* exception to the ADA's broad preemptive reach is, ultimately, a narrow one. *Onoh v. Northwest Airlines, Inc.*, 2009 WL 10702913, at *2 (N.D. Tex. Sept. 1, 2009), *aff'd* 613 F.3d 596 (5th Cir. 2010).

Although the ADA preemption clause refers specifically to state law, courts have found claims preempted when resolution of those claims requires application of a federal law or regulation that is external to the parties' agreement. *See, e.g.*, *Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998) (breach of contract claim preempted because defendant asserted federal defenses, which constituted policies external to the parties' agreement); *cf. In re American Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 566 (N.D. Tex. 2005) (*Wolens* exception could have applied to breach of contract claim where contract referred to both state and federal law, but claim was not preempted because contract at issue incorporated relevant law such that no enlargement of parties' agreement was necessary to adjudicate claim). Moreover, "[t]he Supreme Court has interpreted the preemptive effect of the ADA broadly." *Onoh*, 613 F.3d at 599.

Defendant cites to several cases from other courts holding, as a general matter, that a breach of contract claim is preempted if it is predicated on the defendant's failure to comply with a law that is not specifically named or incorporated by reference in the contract. *See* Def.'s Br. 10-15. Courts

**Memorandum Opinion and Order - Page 8**

in this circuit have not uniformly subscribed to this bright-line rule, focusing instead on the extent to which applying a given law will "enlarg[e] or enhance[]" the parties' agreement. *See, e.g.*, *Onoh*, 613 F.3d at 600-01 (finding that the claim was preempted because, to determine whether the defendant breached its contractual duty, "the court would be required to reach beyond the contract and interpret a variety of external laws that were not expressly incorporated in the contract").

**III. Analysis**

Defendant argues that Plaintiffs' breach of contract claims should be dismissed pursuant to the ADA's preemption clause because they rely upon application of a federal regulation that is external to the parties' agreement as set out in the COC. The Amended Complaint alleges that Defendant breached § 4c(3)(i) of the COC, which dictates that Southwest customers who cancel their trips and seek reimbursement for nonrefundable tickets are "not eligible for a refund except as required by applicable regulations." Def.'s App. 272. Plaintiffs maintain that this clause expressly incorporates 49 C.F.R. § 1510.9(b) ("§ 1510.9"). Am. Compl. ¶ 33. Section 1510.9 sets out the requirement that carriers collect TSA Security Fees and also dictates, in relevant part, that "[a]ny changes by the passenger to the itinerary are subject to additional collection or refund of the security service fee[.]" 49 C.F.R. § 1510.9(b). Plaintiffs argue that Defendant breached the COC when it converted Plaintiffs' TSA Security Fees into nontransferable travel credits because this course of conduct runs afoul of § 1510.9. Thus, because Plaintiffs' theory of breach relies on the content of a federal regulation that was not explicitly referenced by name in the COC, Defendant maintains that Plaintiffs' breach of contract claims are preempted by the ADA and do not fall within the *Wolens* exception. Plaintiffs argue in response that § 1510.9 is the only federal regulation concerning TSA

**Memorandum Opinion and Order - Page 9**

Security Fees. Accordingly, Plaintiffs maintain that the COC did, as a practical matter, explicitly incorporate this regulation by reference, as it is the only potentially applicable regulation.

Plaintiffs' argument ignores the reality that the court cannot verify that § 1510.9 is the only applicable regulation on the issue of TSA Security Fees without combing through scores of federal regulations. Nothing within the COC itself refers to § 1510.9 or to any other specific regulation in the context of refunds, TSA Security Fees, and travel credits. Thus, adjudicating Plaintiffs' claims is impossible without discussing the requirements of a federal regulation that is external to the COC. In this respect, Plaintiffs' breach of contract claims fail the first prong of *Onoh*'s test for determining whether the *Wolens* exception applies, as the claims rely on obligations imposed by policies external to the parties' agreement, rather than obligations imposed by Defendant in drafting the COC. *Onoh*, 613 F.3d at 600.

Moreover, Plaintiffs' claims run afoul to *Onoh*'s second prong: whether incorporation of the relevant regulations would enlarge the parties' agreements and obligations to one another. *Id*. A ruling that Defendant breached the COC by failing to comply with § 1510.9 would enlarge the parties' agreement by providing a remedy or right to Plaintiffs that was not contemplated by the terms of the parties' contract. *See American Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d at 555-56 (noting that preemption may be based on the plaintiff's attempt to "enlarge the airline's obligations and seek additional remedies not available under the contract's terms"). The COC provides that nonrefundable fares "are not eligible for refunds, except as provided in this Section[.]" Def.'s App. 272. If a nonrefundable ticket is cancelled, the COC dictates that "the fare paid for unused nonrefundable Tickets, including taxes, security fees, and Passenger Facility Charges, may be applied toward the purchase of future travel … for the originally ticketed Passenger only." Def.'s

**Memorandum Opinion and Order - Page 10**

App. 272. By contrast, § 1510.9 requires carriers to refund TSA Security Fees, and TSA guidelines suggest that providing a travel credit is not sufficient to constitute a refund. Accordingly, finding Defendant in breach of the COC because it did not comply with § 1510.9 would augment the remedies to which passengers are entitled beyond those contemplated by the parties' agreement.

Plaintiffs maintain that *Kleiner v. Southwest Airlines Co.*, No. 3:08-cv-1975-F, 2009 WL 10674260, at *3 (N.D. Tex. Aug. 17, 2009) and *American Airlines, Inc. Privacy Litigation* establish that a breach of contract claim is not necessarily preempted where the contract at issue makes only general references to applicable laws and regulations. These cases are inapposite for two reasons. First, both decisions predate the Fifth Circuit's decision in *Onoh*, in which the court held that an airline's generic reference to applicable law did not incorporate policies external to the contract and thus the breach of contract claim was preempted. 613 F.3d at 600. Second, the language of the contracts involved in *Kleiner* and *American Airlines, Inc. Privacy Litigation* is distinguishable from that used in the COC. For example, the agreement in *Kleiner* specifically provided that the airline's services would be "performed subject to compliance with all applicable laws and governmental regulations, including those of the U.S. Department of Transportation, the [FFA], and the [TSA], *many of which are not specified herein but are nonetheless binding on [Defendant] and all passengers*." 2009 WL 10674260, at *1 (emphasis added) (alteration in original). The *American Airlines, Inc. Privacy Litigation* court did not directly quote the contract involved, but it held that the breach of contract claim was not preempted because "the laws that [Defendant] maintains are external to the contract are expressly incorporated into it." 370 F. Supp. 2d at 566.

The trial court's decision in *Onoh* similarly distinguished *American Airlines, Inc. Privacy Litigation*. Because the plaintiff in *Onoh* sought to "hold [Defendant] to standards beyond those it

**Memorandum Opinion and Order - Page 11**

expressly agreed to be bound by in its contract of carriage with her," the court concluded that the ADA's preemption clause applied to the plaintiff's breach of contract claim. 2009 WL 10702913, at *3 (differentiating between the contract at issue in *Onoh* and that at issue in *American Airlines, Inc. Privacy Litigation*, the latter of which expressly incorporated relevant law). Accordingly, the weight of authority in this circuit favors Defendant's position.

Finally, dismissal is appropriate because allowing the instant suit to proceed would flout the implied private right of action doctrine. Plaintiffs' only theory of recovery is that Defendant's failure to comply with § 1510.9 constitutes a breach of contract for which Plaintiffs have a private cause of action. Section 1510.9 does not expressly create a private right of action; indeed, it cannot, because "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Plaintiffs do not argue that Congress created a relevant private right of action by statute. Further, the Fifth Circuit has held, in a case analogous to the instant one, that providing a remedy under federal common law for a violation of regulations promulgated by the Department of Transportation "would be, in substance, to craft a private right of action for violations of [the regulation]" and would therefore run counter to Supreme Court precedent. *Casas v. American Airlines*, 304 F.3d 517, 525 (5th Cir. 2002). These authorities, taken together, suggest that judicial enforcement of a private cause of action for an alleged violation of § 1510.9 is improper. Yet, that is precisely what Plaintiffs request. Accordingly, dismissal on the basis of ADA preemption is appropriate.

The COC does not refer to any particular federal regulation, and thus application of § 1510.9 would improperly augment the parties' agreement. For these reasons, Plaintiffs' breach of contract

**Memorandum Opinion and Order - Page 12**

claims do not fall within the *Wolens* exception under the two-prong analysis set out by the Fifth Circuit. *Onoh*, 613 F.3d at 600. The claims are therefore preempted by the ADA. The court, accordingly, **grants** Defendant's Motion to Dismiss.

## IV. Amendment of Pleadings

The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

In response to Defendant's Motion to Dismiss, Plaintiffs did not request leave to amend the complaint in the event the court determined that they failed to state a claim. The provision of Rule 15(a)(2) applies only when a party "expressly request[s] to amend ." *United States, ex. Rel. Jamison v. Del-Jen, Inc.*, 747 F. App'x 216, 221 (5th Cir. 2018) (citation omitted). In any event, in light of the court's determination that Plaintiffs' claims are preempted by the ADA, amendment would be futile and all further amendments would unnecessarily delay the resolution of this action. Moreover, as noted, Plaintiffs did not request to amend their pleadings, and "[a] party who neglects to ask the district court to amend cannot expect to receive such dispensation from the court of appeals."

*Id.* (footnote and citation omitted). For these reasons, the court declines to allow any further amendment of pleadings.

## V. Conclusion

As explained herein**,** Plaintiffs' breach of contract claims violate the ADA's preemption clause because they rely upon application of a federal regulation that is external to the parties' agreement as set out in the COC. Since the claims also do not fall within the narrow exception to the ADA's preemption clause outlined in *Wolens*, Plainitffs' claims are barred. Accordingly, Plaintiffs fail to state a claims upon which relief can be granted, and the court **grants** Defendant's Motion to Dismiss and **denies as moot** Defendant's Motion to Strike (Doc. 25). As required by Federal Rule of Civil Procedure 58, the court will issue judgment by a separate document.

**It is so ordered** this 8th day of September, 2023.

_____
Sam A. Lindsay
United States District Judge